653 A.2d 679

**Chester DEMPSEY and Helen Jane Dempsey, H/W, Appellants,**

**v.**

**The CESSNA AIRCRAFT COMPANY, Pioneer Aviation, Inc., Robert M. Keller and B & J Sheet Metal, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 30, 1994.

Filed Jan. 25, 1995.

Arthur A. Wolk, Philadelphia, for appellants.

Ralph G. Wellington, Philadelphia, for Cessna Aircraft, appellee.

Before ROWLEY, President Judge, and CAVANAUGH, WIEAND, McEWEN, CIRILLO, OLSZEWSKI, BECK, KELLY and POPOVICH, JJ.

WIEAND, Judge:

█ Chester Dempsey entered an agreement to settle a personal injury action pending against The Cessna Aircraft Company (Cessna) in Montgomery County for the sum of three hundred thousand ($300,000.00) dollars. After the settlement had been completed and the consideration paid, however, Dempsey ascertained that Cessna had failed to disclose certain information during discovery which may have strengthened his claim. Therefore, he filed an action against Cessna in the United States District Court for the Eastern District of Pennsylvania in which he alleged, inter alia, that he had been induced to settle by fraud. The federal court dismissed the action, holding, under Pennsylvania law, that Dempsey had affirmed the contract and waived the fraud, if any, by failing to disaffirm the settlement and offering to return the consideration. This decision was affirmed by the Third Circuit Court of Appeals. See: *Dempsey v. Associated Aviation Underwriters,* 977 F.2d 567 (3rd Cir.1992). Thereafter, Dempsey filed in Montgomery County a petition to set aside the settlement on grounds of fraud. The Montgomery County Court, in response to preliminary objections, dis-

missed the petition on grounds of res judicata.[1]  From this order, Dempsey filed the instant appeal.  After careful review, we affirm.

Dempsey had been injured when a Cessna C–150 single engine aircraft crashed during take off.  He filed an action against Cessna to recover for injuries sustained, alleging strict liability, negligence and breach of warranty.[2]  This case was settled prior to trial for the sum of three hundred thousand ($300,000.00) dollars.  Subsequently, Dempsey learned that Cessna had been aware of fuel tank problems with the aircraft and that this information had not been disclosed during discovery.  Contending that he had been induced to settle by fraud, Dempsey filed the federal action and, after that action had been dismissed, the petition in Montgomery County to set aside the settlement.

In *Nocito v. Lanuitti,* 402 Pa. 288, 167 A.2d 262 (1961), where the plaintiff sought to recover damages for fraud which had induced him to execute a release in a trespass action, the Supreme Court affirmed a judgment in favor of the defendant. The Court said:

> If the procurement of this release was by fraud, when Nocito discovered it he had his choice either to disaffirm the contract and offer to return to Lanuitti or his insurance carrier the consideration for this release or to affirm the voidable contract and waive the fraud.  Nocito's failure to tender back the consideration after he discovered the alleged fraud constituted a waiver of the fraud and an affirmance of the contract: *Walker v. Harbison,* 283 Pa. 111, 128 A. 732; [ (1925) ] *Corporation Funding & Finance Co. v. Stoffregen,* 264 Pa. 215, 107 A. 727.  [ (1919) ]

*Id.* at 290, 167 A.2d at 263.  See also: *Hess v. Evans,* 288 Pa.Super. 180, 182, 431 A.2d 347, 348 (1981).  It was in

---

1.  As a general rule, res judicata is an affirmative defense and should be pleaded as new matter in an answer.  See: Pa.R.C.P. 1030.  In the instant case, however, the facts are not in dispute, and neither party has objected to the procedure followed in the trial court.

2.  Cessna subsequently joined as additional defendants various parties who had been charged with maintenance of the aircraft.

reliance on this state of the law pertaining to the setting aside of settlements that Dempsey's action for fraud was dismissed by the United States District Court for the Eastern District of Pennsylvania.

Was this decision res judicata in the subsequent attempt by Dempsey to move in the state court to set aside the settlement? We conclude that it was.

■ The doctrine of res judicata holds that "[a] final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the same parties or their privies on the same cause of action." *Mintz v. Carlton House Partners, Ltd.,* 407 Pa.Super. 464, 474, 595 A.2d 1240, 1245 (1991), quoting *Stevenson v. Silverman,* 417 Pa. 187, 190, 208 A.2d 786, 788 (1965), *cert. denied,* 382 U.S. 833, 86 S.Ct. 76, 15 L.Ed.2d 76 (1965). The purpose of the doctrine is "to minimize the judicial energy devoted to individual cases, establish certainty and respect for court judgments, and protect the party relying on the prior adjudication from vexatious litigation." *Mintz v. Carlton House Partners, Ltd., supra* at 474, 595 A.2d at 788, quoting *Lebeau v. Lebeau,* 258 Pa.Super. 519, 524, 393 A.2d 480, 492 (1978).

> Where parties have been afforded an opportunity to litigate a claim before a court of competent jurisdiction, and where the court has finally decided the controversy, the interests of the state and of the parties require that the validity of the claim and any issue actually litigated in the action not be litigated again.

*Ham v. Sulek,* 422 Pa.Super. 615, 621–622, 620 A.2d 5, 8 (1993). Regardless of whether the plaintiff effects a recovery in the first action, he may not relitigate an action which has once been adjudicated. 46 Am.Jur.2d, Judgments § 404.

■ Application of the doctrine of res judicata requires that the two actions possess the following common elements: (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the parties; (4) identity of the capacity of the parties. *Matternas v. Stehman,* 434 Pa.Super. 255, 261–63, 642 A.2d 1120, 1123 (1994); *McArdle v. Tronetti,* 426 Pa.Super. 607, 612, 627 A.2d 1219, 1222 (1993), *allocatur*

*denied,* 537 Pa. 622, 641 A.2d 587 (1984); *Banker v. Valley Forge Ins. Co.,* 401 Pa.Super. 367, 373–374, 585 A.2d 504, 508 (1991), *allocatur denied,* 529 Pa. 615, 600 A.2d 532 (1991). Here, it is clear that the first, third and fourth elements are present, and we need focus only on the second element.

"The term 'cause of action' is not easily defined, and the authorities have laid down no thoroughly satisfactory and all-embracing definition...." 46 Am.Jur.2d, Judgments § 406.

A fundamental test applied for comparing causes of action, for the purpose of applying principles of res judicata, is whether the primary right and duty, and delict or wrong, are the same in each action. Under this test, there is but one cause of action where there is but one right in the plaintiff and one wrong on the part of the defendant involving that right.

46 Am.Jur.2d, Judgments § 406 (footnotes omitted). Thus, it has been said that the primary focus should be whether the ultimate and controlling issues have been decided. *Hammel v. Hammel,* 431 Pa.Super. 230, 238, 636 A.2d 214, 218 (1994). See also: *Hopewell Estates, Inc. v. Kent,* 435 Pa.Super. 471, 477, 646 A.2d 1192, 1195 (1994); *Mintz v. Carlton House Partners, Ltd., supra* at 475, 595 A.2d at 1247; *In Re Jones & Laughlin Steel Corp.,* 328 Pa.Super. 442, 450, 477 A.2d 527, 531 (1984); *Magee v. Grange Nat. Bank of Wyoming County,* 149 Pa.Super. 477, 480, 27 A.2d 488, 489 (1942).

■ Identity of two causes of action may be determined by considering the similarity in the acts complained of and the demand for recovery as well as the identity of the witnesses, documents and facts alleged. *McArdle v. Tronetti, supra* at 612, 627 A.2d at 1222; *In Re Jones & Laughlin Steel Corp., supra* at 450–451, 477 A.2d at 531. "In determining whether res judicata should apply, a court may consider whether the factual allegations of both actions are the same, whether the same evidence is necessary to prove each action and whether both actions seek compensation for the same damages." *Hopewell Estates, Inc. v. Kent, supra* at 476–77, 646 A.2d at 1194–1195. See also: *Mintz v. Carlton House Partners, Ltd., supra* at 475, 595 A.2d at 1246; *Magee v. Nat. Bank of*

*Wyoming County, supra* at 480, 27 A.2d at 489. "If the acts or transactions giving rise to causes of action are identical, there may be sufficient identity between two actions for the summary judgment in the first action to be res judicata in the second." 10 Standard Pa.Practice 2d, Judgments § 65:50 (footnote omitted).

■ In the federal action, the issues were whether Cessna had withheld information which Dempsey had sought to discover and had thereby induced the appellant by fraud to settle his claim. In Dempsey's state court petition he raised the same issues. Thus, the complaint in the federal action and the petition in the state action both relied upon and asserted the same conduct and transaction. Both actions also alleged the same injury, i.e., appellant's acceptance of an unfavorable settlement. Finally, both actions relied upon the same evidence—the discovery information which was allegedly withheld. In order to prevail in both actions it was necessary to prove fraud. In both actions, moreover, the cause of action would be defeated by an affirmance of the settlement after the facts had become known.

■ It is of no consequence that the federal action was commenced by complaint and the state action was commenced by petition to set aside a settlement agreement. The form in which two actions are commenced does not determine whether the causes of action are identical. 10 Standard Pa.Practice 2d, Judgments § 65:49.

The application of the doctrine of res judicata to identical causes of action does not depend upon the identity or differences in the forms of the two actions. A judgment upon the merits bars a subsequent suit upon the same cause, though brought in a different form of action, and a party therefore cannot, by varying the form of action or adopting a different method of presenting his case, escape the operation of the principle that one and the same cause of action shall not be twice litigated.

46 Am.Jur.2d, Judgments § 411 (footnotes omitted).

■ Appellant also cannot avoid the consequences of a prior judicial determination merely by altering the character

of the relief sought. See: *Stevenson v. Silverman, supra* at 192, 208 A.2d at 788. Where the damages suffered are a consequence of the same actions alleged in an earlier suit, a new cause of action is not present merely because the relief sought has changed. *Sustrik v. Jones & Laughlin Steel Corp.*, 413 Pa. 324, 327, 197 A.2d 44, 46 (1964). Res judicata may bar a second action based upon the same transaction even if additional grounds for relief are presented. *Larsen v. Larsen*, 392 Pa. 609, 611, 141 A.2d 353, 354 (1958). "[T]he fact that a different form or measure of relief is asked does not preclude the application of the judgment to estop the maintenance of the second action; for application of the doctrine, it is not necessary that the two actions be identical with respect to the relief sought." 46 Am.Jur.2d, Judgments § 412 (footnotes omitted). See also: 46 Am.Jur.2d, Judgments § 411 (Where there has been a judgment on the merits, plaintiff may not maintain a second action to enforce another remedy.) That appellant sought monetary damages in the federal court but requested equitable relief in the nature of rescission in the state court does not change the fact that he had a single cause of action.

The decision in *Briggs v. Erie Ins. Group,* 406 Pa.Super. 560, 594 A.2d 761 (1991), does not command a different result. There the two actions involved different parties, and the decision of the majority considered only the defense of collateral estoppel. It remained for the author of the concurring opinion to observe that res judicata could have no application because the parties were not the same. Nevertheless, to the extent that *Briggs* can be interpreted as holding that an action to rescind a release for fraud and an action to recover damages for fraud are not the same cause of action for purposes of res judicata, *Briggs* is disapproved.[3] See: *Nocito v. Lanuitti,*

---

**3.** Appellant implies that the decision of the federal court in the action to recover damages for fraud was incorrect because it was at variance with the decision in *Briggs.* However, the *Briggs* court did not consider the decision of the Supreme Court in *Nocito v. Lanuitti, supra,* upon which the federal court relied. Moreover, and in any event, even if it could be said that the decision by the federal court was subject to question, it would not prevent the application of res judicata to a subsequent assertion of the same cause of action in another court.

*supra.* See also: *Wedgewood Diner v. Good,* 368 Pa.Super. 480, 534 A.2d 537 (1987).

Appellant, when he discovered information which had not been supplied during discovery, asserted that he had been induced to settle his claim by fraud. He could then either have disaffirmed the settlement and offered to return the amount which he had been paid or he could have affirmed the settlement and waived the fraud. In a federal action to recover additional damages the court held that he had affirmed the settlement and waived the fraud. That decision is now res judicata and bars the present, subsequent action to rescind the settlement and set it aside.[4]

Affirmed.

McEWEN, J., files a concurring opinion.

CIRILLO, J., files a dissenting opinion in which KELLY, J., joins.

McEWEN, Judge, concurring:

While I commend the destination of my distinguished colleagues who here dissent, I am unable to join in their journey and am instead compelled to join in the majority opinion.

The shift in jurisprudential focus from property to individual rights triggered by the United States Supreme Court in the decades immediately following World War II, commenced, of course, with *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), and attained crescendo pitch in the 1960s when the Court effected sweeping enhancement of constitutional standards for protection of the accused. The decision of the Pennsylvania Supreme Court in *Nocito v. Lanuitti,* 402 Pa. 288, 167 A.2d 262 (1961)—the case which is the vortex of this appeal—preceded that shift of jurisprudential focus to the individual, since the *Nocito* court applied a

---

4. Because we hold that appellant's petition to rescind his settlement is barred by principles of res judicata, i.e., claim preclusion, we do not consider appellee's additional arguments that the petition is also barred by principles of collateral estoppel, i.e., issue preclusion, and the doctrine of election of remedies.

legalistic logic to its focus upon property when it held that logic compels the return of the award if one is to subsequently question the basis for the award. Legalistic logic loses even its gloss in application, for no average individual, as distinguished from the vested and affluent, is able to preserve the proceeds of an award or to later garner sufficient resources as to enable a "return of consideration", the condition precedent to disaffirmance reiterated in *Nocito*. To impose this condition precedent of return of consideration upon a suit for fraud is to preclude, in most situations, any risk of sanction for fraud in settlement negotiations—or, as the advocate would exclaim, the condition precedent serves as license to deceive and defraud.

This Court, mindful of this lingering inequity, constructed in *Briggs v. Erie Ins. Group*, 406 Pa.Super. 560, 594 A.2d 761 (1991), a rationale which obviated compliance with that condition and found that the subsequent fraud action was *not* barred by principles of *res judicata*, where the second action, filed after the first action had ended with a negotiated settlement, was instituted *not* against the defendant driver with whom the Briggses had settled their first lawsuit, but instead was instituted against Erie Insurance Company for its independent tort in intentionally misrepresenting the limits of liability of the applicable policy of insurance.

Having hopefully expressed the basis for my espousal of the goal of my colleagues who dissent, I proceed to expression of the basis for my joinder in the opinion of my colleagues in the majority—commencing with the suggestion that the essential issue for our review is not the state of the law of disaffirmance in Pennsylvania, but whether the trial court properly proceeded to application of the doctrine of *res judicata*.

Counsel for appellants in the action filed in the United States District Court for the Eastern District named Associated Aviation Underwriters, Lonnie Williams (the AAU's claims manager), and Cessna Aircraft Company as defendants, presented a cause of action based upon fraud and misrepresentation, and sought compensatory and punitive damages. The District Court, acknowledging the holding of this Court in

*Briggs,* noted that "a federal court sitting in its diversity jurisdiction cannot lightly assume that the views of an intermediate appellate court, however recent, are a more reliable indicator of how the Supreme Court of Pennsylvania would decide the present controversy than existing Supreme Court authority, whatever its vintage.... We therefore decline plaintiffs' invitation to overrule *Nocito* based upon *Briggs.*" *Dempsey v. Associated Aviation Underwriters,* 141 F.R.D. 248, 250 (E.D.Pa.), *aff'd.,* 977 F.2d 567 (3rd Cir.1992). Applying *Nocito,* the federal district court granted summary judgment in favor of Cessna in the fraud action.[1] Appellants, arguing that the district court erred in refusing to apply *Briggs,* returned to state court and sought, for the first time, rescission of the settlement agreement based upon the alleged fraud committed by Cessna.

The state trial court judge, the learned Judge S. Gerald Corso, correctly held that further proceedings based on the allegedly fraudulent conduct of Cessna were barred by principles of *res judicata.* Judge Corso reasoned as follows:

"*res judicata* encompasses not only those issues, claims or defenses that are actually raised in the prior proceeding, but also those which *could have been raised* but were not. *E–Z Parks, Inc. v. Philadelphia Parking Authority,* 110 Pa.Commw. 629, 532 A.2d 1272 (1987).

Applying the foregoing to this case, there has been a final judgment on the merits which has been affirmed on appeal. *See: Hubicki v. ACF Industries, Inc.,* 484 F.2d 519, 524 (3rd Cir.1973).... The instant case and the second federal action share identical causes of action or "things sued upon". More specifically, both actions arose out of plaintiff's April 2, 1988, airplane accident and both actions allege that Cessna fraudulently induced the settlement by withholding critical discoverable documents. Although the plaintiffs

---

1. While Cessna was granted judgment in its favor based on *Nocito,* the federal district court entered judgment in favor of Associated Aviation Underwriters and its claims manager on the basis of an absence of any legal duty owed by Associated Aviation Underwriters to the Dempseys. *See: Dempsey v. Associated Aviation Underwriters, supra,* 141 F.R.D. at 252.

seek recision of contract in this action and sought damages in the second federal action, this does not change the identity of the underlying cause of action." (emphasis supplied).

It merits emphasis that I agree with the dissenting position that the initial state court negligence action did not operate to preclude the subsequent federal action for fraud, because the fraud action commenced in federal court was based upon a different cause of action, arose from a separate although related occurrence, and gave rise to different remedies. Nonetheless, that federal action resulted in a final judgment, which was affirmed on appeal by the Court of Appeals for the Third Circuit. *See: Dempsey v. Associated Aviation Underwriters,* 141 F.R.D. 248 (E.D.Pa.) *aff'd.,* 977 F.2d 567 (3rd Cir.1992). It is *that* final judgment, entered by the federal court, which, the state trial court properly held, precludes further proceedings in the state court.

While there is some support for recognition of an exception to the application of *res judicata,*[2] a final judgment, even where the adjudication is erroneous, is *res judicata* in the absence of an appeal. 20A PLE Judgment § 251. Any inclination to construct an exception fades when the forum of the adjudication is not Pennsylvania, and, in this instance, principles of comity compel recognition of the federal court judgment:

> Pennsylvania courts have long recognized the principle that state courts are bound by the judgments of federal courts. *See London v. City of Philadelphia,* 412 Pa. 496, 499, 194

---

**2.** The allegation of fraud in the procurement of the settlement, and the inability of the federal court to apply the holding of the Superior Court in *Briggs* provides an argument for application of the exception noted by the Supreme Court in *Clark v. Troutman,* 509 Pa. 336, 502 A.2d 137 (1985):

> "an intervening change in the relevant legal climate may warrant reexamination of the rule of law applicable as between the parties.... reexamination is appropriate if the change in the law, or other circumstances, are such that preclusion would result in a manifestly inequitable administration of the laws...."

*Clark v. Troutman,* supra at 341, 502 A.2d at 139 quoting Restatement (Second) Judgments § 28, comment (c).

A.2d 901, 902–03 (1963) (once federal court validly acquired jurisdiction, its jurisdiction extended to all matters ancillary to the main cause of action and it would violate *res judicata* doctrine to permit relitigation of state claim in state court); *Bardo v. Commonwealth of Pennsylvania*, 40 Pa.Commw. 585, 587 n. 1, 397 A.2d 1305, 1307 n. 1 (1979) ("It is clear that a federal court decision is *res judicata* in subsequent state proceedings."). Quite clearly, the Commonwealth *could have litigated* in 1978 in the federal court issues presented before the state court in *Scanlon*. But they elected not to do so. *Having made that decision* in 1978— for whatever reason—the Commonwealth today is bound by the federal judgment under *res judicata*, a doctrine recognized by the highest courts in both the federal and the Pennsylvania court systems.

*Delaware Valley Citizens Council for Clean Air v. Commonwealth of Pennsylvania*, 755 F.2d 38, 44 (3rd Cir.1985) (emphasis supplied).

Since appellants could have sought rescission of the settlement as an alternative remedy to their claim for compensatory and punitive damages in the federal action based upon fraud, the issue of whether *Briggs* permits an action for damages for fraud without rescission of the settlement agreement is an issue which may not now be inquired into by this Court. I, therefore, join in the opinion of the majority.

CIRILLO, Judge, dissenting.

On April 2, 1988, a Cessna C–150 single engine aircraft operated by appellant Chester Dempsey crashed on takeoff. Following the accident, appellants Chester Dempsey and his wife, Helen, (the Dempseys) filed suit in federal court against appellee Cessna alleging that the accident was caused by defects in the aircraft's fuel system. Subsequent to filing the instant case on January 23, 1990, the Dempseys moved for, and were granted, a voluntary dismissal of their federal claim.

On October 15, 1990, the Dempseys agreed to a settlement of all claims against Cessna. The Dempseys accepted $300,-000.00 and, in return, executed a joint tortfeasor release in

favor of Cessna. Thereafter, counsel for Cessna learned that his client had located certain documents relating to Cessna's development of a service kit concerning the installation of additional quick drains in the fuel tanks of the C–150 aircraft. In early January, 1991, after determining that these quick drain documents may have been responsive to certain discovery requests by the Dempseys in the voluntarily dismissed federal action, counsel for Cessna notified the Dempseys.

Consequently, the Dempseys filed a second federal action alleging that Cessna had fraudulently induced them to enter into the settlement and joint tortfeasor release. The Dempseys' claim for relief in this second federal action was for monetary damages; they did not seek rescission of the agreement nor did they tender return of the settlement proceeds.

On September 11, 1991, Cessna filed a motion to dismiss or, in the alternative, for summary judgment in the second federal action. By memorandum opinion dated February 7, 1992, the Honorable Stewart Dalzell dismissed with prejudice the Dempseys' fraud complaint in the second federal action. In rendering his decision, Judge Dalzell of the United States District Court for the Eastern District applied Pennsylvania law and held that the Dempseys' failure to tender the settlement consideration constituted an affirmance of the voidable contract and a waiver of the fraud claim. Further, since Judge Dalzell considered information outside the record, his order constituted summary judgment against the Dempseys under Rule 56 of the Federal Rules of Civil Procedure. The Dempseys appealed to the United States Court of Appeals for the Third Circuit which affirmed the order.

After briefs were filed in the Court of Appeals for the Third Circuit, but before oral argument was held, the Dempseys returned to state court and filed a petition to set aside the joint tortfeasor settlement and declare the Dempseys' release of Cessna null and void. The Dempseys based this petition upon the same fraud claim asserted in the second federal action and seek rescission of the settlement and release. Cessna filed preliminary objections in the nature of a motion

to deny and strike the petition. The trial court sustained Cessna's motion by an order dated February 10, 1993.

In their timely appeal, the Dempseys raise the following issues:

1. Whether the trial court abused its discretion and/or committed reversible error by failing to cite or follow *Briggs v. Erie Insurance Group,* 406 Pa.Super. 560, 594 A.2d 761 (1991), which holds that actions for damages for fraud in the inducement of a settlement are separate and distinct from actions for damages for personal injury?

2. Whether the trial court erred under *Briggs* in holding that the petition to set aside was barred by the doctrine of *res judicata?*

3. Whether the trial court erred under *Briggs* in holding that the petition to set aside was barred by the doctrine of collateral estoppel?

4. Whether the trial court erred under *Briggs* in holding that the petition to set aside was barred by the doctrine of election of remedies?

Since this is an appeal from an order sustaining preliminary objections in the nature of a demurrer, it must appear with certainty that, upon the facts averred, the law will not permit recovery by the plaintiff. *Muhammad v. Strassburger,* 526 Pa. 541, 587 A.2d 1346 (1991); *Allstate Ins. Co. v. Fioravanti,* 451 Pa. 108, 299 A.2d 585, 587 (1973). Preliminary objections should be sustained and a complaint dismissed only in cases which are clear and free from doubt, and any doubt should be resolved by refusal to sustain the objections. *Id.*

Instantly, the majority has found that the Dempseys' claim is barred by the doctrine of *res judicata.* I disagree.

Application of the doctrine of *res judicata* requires the concurrence of four elements: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality in the persons for or against whom the claim is made. *City of Pittsburgh v. Zoning Board of Adjustment,* 522 Pa. 44, 54, 559 A.2d 896, 901 (1989). In the instant case, it is clear

that parts (3) and (4) of the test have been met as the Dempseys named Cessna as a defendant in both the federal and the state actions. However, an application of this court's decision in *Briggs, supra,* 406 Pa.Super. 560, 594 A.2d 761, reveals that parts (1) and (2) of the *res judicata* test are lacking.

In *Briggs,* the plaintiffs were the executors of the estates of two women who died as a result of an automobile collision. Erie, the insurer of the driver who operated the vehicle which caused the accident, initiated settlement discussions with the plaintiffs. As a result of these discussions, the plaintiffs entered into a settlement and executed a general release of all their claims arising from the accident.

Despite the release, the plaintiffs subsequently filed a personal injury lawsuit against the driver insured by Erie and another individual alleged to have caused the accident. The defendants pled the defense of the release and filed motions for judgment on the pleadings. In response, the plaintiffs asserted that the release had been fraudulently obtained because an Erie insurance representative had misrepresented policy limits during settlement discussions. The trial court, noting that the defendants were not accused of perpetrating the fraud, granted the defendants' preliminary objections based on the fact that the plaintiffs had not tendered the settlement proceeds. On appeal, this court affirmed the trial court's decision.

The plaintiffs next initiated a lawsuit against Erie claiming that Erie had committed fraud by misrepresenting policy limits during the original settlement discussions. In this second action, the plaintiffs sought damages rather than rescission as remedy. Erie moved for summary judgment which was granted by the trial court. Ultimately, this court vacated the trial court's order, holding that the dismissal of the actions against the two original defendants did not preclude a second suit for an independent fraud against Erie. In his concurring opinion, Judge Brosky wrote:

Appellee has also suggested that the present action is barred by the doctrine of *res judicata.* However, this is not

the case. Appellant's first action was a claim for liability based upon the negligent operation of a motor vehicle. The present action is a claim for fraud based upon settlement negotiations which ensued after the automobile accident. Not only are the parties different, the nature of the claims and the facts supporting them, although interrelated, are distinctly different as well. Therefore, *res judicata* does not bar the present action.

406 Pa.Super. at 570, 594 A.2d at 765.

Similarly, in the instant case, the Dempseys have initiated two different claims with very different underlying facts. In the state action, the Dempseys allege negligence, strict liability, and breach of warranty arising from the aircraft accident. In the federal action, the Dempseys claimed fraud, civil conspiracy, and concerted action arising from the defendants' conduct during the course of the settlement negotiations and other pretrial negotiations subsequent to the aircraft accident. Additionally, the remedies sought in the actions are also dissimilar. In the federal action, the Dempseys sought monetary damages for fraud. In the state action, they seek monetary damages for the personal injury and rescission of the settlement to fully recover these damages. As in *Briggs*, although the Dempseys seek rescission of the personal injury settlement based on fraud, this does not change the fact the two actions have different underlying causes of action, arise from different occurrences, and seek different remedies. As such, I believe that the trial court erred in holding that the Dempseys' claim was barred by the doctrine of *res judicata*.

The trial court also found that the Dempseys' claim was barred by the doctrine of collateral estoppel. Collateral estoppel, the doctrine of issue preclusion, forecloses relitigation of an issue of fact or law which was actually litigated and was necessary to the original judgment. *Muhammad*, 526 Pa. at 546, 587 A.2d at 1348; *City of Pittsburgh*, 522 Pa. at 54, 559 A.2d at 901. Further, in *Briggs*, this court held:

The trial court in its opinion in the previous case noted that fraudulent conduct of the insurer was not an issue, and it dismissed Appellant's claims against the individual tortfea-

sors on the basis that the Appellants had failed to return the settlement proceeds which precluded them from pursuing a rescission of settlement agreement and release. As in *Muhammad v. Strassburger*, [citation omitted], the doctrine of collateral estoppel does not bar the instant matter since there are issues in this case which were not litigated in Appellants' case against the individual tortfeasors.

406 Pa.Super. at 566, 594 A.2d at 763.

Similarly, in the instant case, the issue underlying the Dempseys' petition for rescission has never been litigated. The sole issue actually litigated and decided in the federal action was whether the Dempseys could maintain an action for fraud without tendering settlement proceeds. As that issue was decided against the Dempseys, the ultimate issue of whether fraud actually occurred was never actually litigated or decided. Thus, while the federal court decided that the Dempseys could not proceed with their action for fraud, the federal court did not rule upon whether fraud actually occurred. Accordingly, since the issue of fraud, which underlies the Dempseys' petition for rescission in the instant case, was not litigated and decided in the federal action, I believe that the trial court erred in holding that the doctrine of collateral estoppel barred the Dempseys' claim.

The trial court also held that the Dempseys' claim was barred by the doctrine of election of remedies. In reaching its conclusion, the trial court found that the Dempseys, having affirmed the settlement by suing for fraud in the federal action, could not now take the inconsistent position of disaffirming the settlement by petitioning for rescission. I find this reasoning to be directly contrary to this court's decision in *Briggs*.

In *Briggs*, this court found that the plaintiffs' cause of action for fraud was not based upon claims arising out of the settlement contract, but was solely based upon claims related to Erie's conduct during the settlement negotiations. 406 Pa.Super. at 567, 594 A.2d at 763. As such, this court went on to hold that the fraud action was consistent with the earlier

action for rescission and, therefore, the doctrine of election of remedies did not apply. *Id.* The same is true for the instant case. The Dempseys' federal action for fraud was based solely upon claims relating to the actions of Cessna during the settlement negotiations, while the present action for rescission is based upon the settlement contract itself. The mere fact that the Dempseys initiated their fraud action before they sought rescission does not preclude application of this court's holding in *Briggs*. Thus, I believe that there is nothing inconsistent about the Dempseys affirming the settlement by suing for fraud and now seeking rescission to pursue the underlying personal injury action. Accordingly, I believe that the trial court erred in holding that the doctrine of election of remedies barred the Dempseys' claim. Consequently, I would reverse the order of the trial court and allow the Dempseys to proceed to trial.

Further, I fail to understand the majority's repeated attempts to discount *Briggs*. I believe that our opinion in *Briggs* was well reasoned and went to great lengths to serve justice. Further, the relevance of *Briggs* to the instant case is undeniable, as the facts and issues in both cases are nearly identical.

The majority, in the instant case, has not only discounted the import of *Briggs*, but, in the process, it has created an unjust result. Beginning with Judge Dalzell's questionable application of relevant Pennsylvania law in their federal action,[1] and culminating with the majority's decision today, the

1. In dismissing the Dempseys' federal action, Judge Dalzell, relying upon *Nocito v. Lanuitti*, 402 Pa. 288, 167 A.2d 262 (1961), found that the Dempseys could not recover monetary damages for Cessna's fraud without first returning the proceeds of the settlement. This reasoning has been re-affirmed by the majority today. I, however, have reservations about characterizing this as the correct application of relevant Pennsylvania law.

In *Briggs* we stated the following:
Appellants do not in their Complaint seek rescission of the releases, but rather seek damages for the losses they have allegedly suffered due to this fraudulent action. Because Appellants are not seeking to avoid their releases, a return of the settlement proceeds is not a prerequisite to this action.

Dempseys' have been denied access to our judicial system at every turn. As such, Cessna may have been allowed to benefit from its conduct during settlement negotiations and Mr. Dempsey may never be allowed to present evidence to a jury that Cessna's negligence caused his crippling injuries. I find this outcome to be reprehensible.

Accordingly, I dissent.

KELLY, J., joins.

---

406 Pa.Super. at 564, 594 A.2d at 763. Since the facts and issues presented in *Briggs* so closely mirror those presented in the present case, I have difficulty finding that the above passage would not apply instantly. Obviously, this is not the appropriate forum to review Judge Dalzell's decision, however, I feel compelled to question its propriety.