

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-14-2005

# Winters v. Patel

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1753

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Winters v. Patel" (2005). *2005 Decisions.* Paper 234.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/234

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-1753

SUSAN F. WINTERS,
                                    Appellant

v.

MARYAGNES FRANGIPANNI PATEL, AS PAST ADMINISTRATRIX,
FIDUCIARY AND ACCOUNTANT OF THE ESTATE OF
RONALD PATEL, DECEASED, AND IN HER OWN RIGHT;
JOHN DOE, ADMINISTRATOR OF THE ESTATE OF
RONALD PATEL, DECEASED; GARY L. BORGER, ESQUIRE

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 03-cv-01737
(Honorable Clarence C. Newcomer)

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 17, 2005

Before: SCIRICA, *Chief Judge*, VAN ANTWERPEN and COWEN, *Circuit Judges*

(Filed: November 14, 2005)

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

In this diversity case, the District Court granted Appellee's motion for summary judgment on all claims raised against her individually and as "past Administratrix."[1] We will affirm.

I.

Because we write for the parties, our recitation of the facts will be abbreviated. Appellant Susan Winters filed suit in the United States District Court for the Eastern District of Pennsylvania, naming Maryagnes Frangipanni Patel as a defendant both in her individual capacity and "as past Administratrix, Fiduciary and Accountant of the Estate of Ronald Patel, Deceased." Winters alleged Mrs. Patel fraudulently converted monies owed to Winters by Ronald Patel, Mrs. Patel's now-deceased husband and Winters's former husband. Because an administrator for Mr. Patel's estate was not yet assigned, Winters also named John Doe, "Administrator of the Estate of Ronald Patel."[2]

In 1999, Winters and Mr. Patel executed a divorce settlement, under which Mr. Patel agreed to pay Winters a total of $143,000 in four installments. However, Mr. Patel died on January 7, 2000 after making only one payment to Winters. Shortly after Mr.

_____

[1] The parties apparently agree that Pennsylvania law applies to the interpretation of the release agreement at issue as well as to Winters's underlying claims.

[2] Appellant Gary Borger is also a named defendant in this action. Winters's claims against Borger went to a jury, which returned a verdict in favor of Winters and awarded her $296,544.70 in damages. Borger's appeal from that judgment and from the District Court's denial of his Rule 50 and 59 motions is addressed in a separate opinion of this Court.

2

Patel's death, his widow, Mrs. Patel, collected the proceeds of his insurance policy and 401(k) benefits, both of which Winters claims an interest in. On May 13, 2000, Winters signed a Release and Settlement Agreement ("the Release") in a separate action filed in the Philadelphia Court of Common Pleas against several defendants, including the Patels. All parties agreed to release "all manner of claims, actions and causes of action . . . which could have been set forth . . . whether known or unknown." Mrs. Patel signed the Release for herself and as administrator of the Estate of Mr. Patel, even though she had not yet been formally appointed to that post. Winters collected $10,000 from the Patels as well as substantial funds from the other defendants under this agreement.

Despite this Release, Winters filed a series of lawsuits against Mrs. Patel both individually and as administrator of Mr. Patel's estate, alleging both breach of the divorce settlement agreement and numerous counts of fraud. Since filing her first action in May 2001, Winters has contended the Release does not bar her claims because it was procured through fraud. In the present action, the District Court rejected this argument and relied on the Release to grant Mrs. Patel summary judgment on all claims asserted against her both individually and as so-called "past Administratix" of Mr. Patel's estate. Winters now appeals.

The District Court had jurisdiction under 28 U.S.C. §§ 1332 and 1367. Our jurisdiction is based on 28 U.S.C. § 1291. Our review of the District Court's order

3

granting summary judgment is plenary. *In re Mushroom Transp. Co.*, 382 F.3d 325, 335 (3d Cir. 2004) (drawing all reasonable inferences in favor of the non-moving party).

## II.

At the outset, we will clarify the issue on appeal. The District Court granted summary judgment in favor of Mrs. Patel, concluding the Release barred her claims. Winters does not challenge the District Court's holding that the Release covered all claims, known or unknown, in existence at the time it was signed. Nor does she contend the claims she raises against the Patels arose after she signed the Release. Therefore, the sole issue on appeal is whether Winters may avoid the consequences of the Release due to Mrs. Patel's alleged fraud. We agree with the District Court that she cannot.[3]

In the first instance, Winters's claims against Mrs. Patel as "past Administratrix" cannot be sustained because Winters fails to name the correct party. All causes of action to enforce a decedent's liabilities that survive him must be brought against his current personal representative. 20 Pa. Cons. Stat. § 102; *Meyers v. Estate of Wilks*, 655 A.2d 176, 178 (Pa. Super. Ct. 1995); *see Smith v. Glen Alden Coal Co.*, 32 A.2d 227, 235 - 236 (Pa. 1943) (finding decree enforcing a debt of the deceased's estate should be directed at the current executrix, not the former). Winters acknowledges Mrs. Patel was not the administrator of Mr. Patel's estate at any time during this action. Mrs. Patel is not

---

[3] In this diversity action, the parties agree we apply Pennsylvania law to the interpretation of the release agreement at issue as well as to Winters's underlying claims.

4

personally liable for the actions of Mr. Patel because of her former status as administrator. *Cf. Meyers*, 655 A.2d at 178 (finding plaintiff must sue representative "in his capacity as the executor or administrator of the estate" in order to enforce the liabilities of the deceased). Thus, all claims asserted against Mrs. Patel as "past Administratrix" were properly adjudicated in Mrs. Patel's favor.

As for the claims asserted against Mrs. Patel individually, the District Court determined the Release barred these claims. Winters contends the Release is not valid because it was induced by fraud. According to Winters, Mrs. Patel caused Winters to sign the Release by warranting she was authorized to act as administrator, thereby lulling Winters into believing Winters's interests in Mr. Patel's estate would be protected. Irrespective of the merits of this assertion, we agree with the District Court that Winters waived any right she may once have had to void the release based on fraud.[4]

At the time Winters learned of Mrs. Patel's alleged fraud, she was required to elect one of two remedies. She could have either rejected the Release and sued for damages in contract or affirmed the Release and sued for damages in tort. *Tilghman v. Dollenberg*, 213 A.2d 324, 326-27 (Pa. 1965) (cited in *Allied Erecting & Dismantling, Co., Inc. v.*

---

[4] The District Court relied on three other grounds to support its holding that the Release bars Winters's claims: (1) Mrs. Patel's alleged fraud only makes the Release voidable as to the claims against Mrs. Patel individually, (2) Mrs. Patel's later formal appointment as administrator related-back to validate her action on behalf of the Estate, and (3) any alleged fraud by Mrs. Patel would make the Release voidable by the Estate, not by Winters. Because we find Winters has waived her right to void the Release, we need not address these issues.

*USX Corp.*, 249 F.3d 191, 198-99 (3d Cir. 2001)); *Nocito v. Lanuitti*, 167 A.2d 262, 262 (Pa. 1961) (same). In order to reject the Release, Winters was required first to tender back the consideration she received under that agreement. *Allied Erecting*, 249 F.3d at 198. Once Winters affirmed the Release, she lost her ability to rescind. *Id.* at 199-200 ("[A] party can affirm a contract and perform according to its terms for a period of time, but once fraudulent inducement is alleged the party must either return consideration or abandon the claim.").

Winters did not offer tender until May 28, 2003, over two years after she formally asserted the Release was procured through fraudulent inducement in her May 16, 2001 complaint. Winters's retention of the consideration she obtained from the Release once she learned of the alleged fraud, and for over two years thereafter, acted as an affirmation of the validity of the Release and bars her attempt to avoid its consequences at this time. *See id.*; *Nocito*, 167 A.2d at 263 (finding plaintiff affirmed a general release and waived the right to rescind it on the basis of fraud due to his "failure to tender back the consideration after he discovered the alleged fraud"); *Heastings v. McGee*, 66 Pa. 384 (1870) (finding a person "affirms the validity of the contract" if he "uses the property as his own after the discovery of fraud"). Because Winters affirmed the contract, she would normally retain the right to sue in tort for fraud. In this case, however, Winters's affirmance of the Release also bars her from bringing such a claim.

6

Winters contends the Release was automatically void due to Mrs. Patel's alleged fraud, and thus no tender was required. This amounts to a claim of fraud in the execution. Winters is in error. Her claim is one of fraud in the inducement, not fraud in the fact. *See Connors v. Fawn Min. Corp.*, 30 F.3d 483, 490 (3d Cir. 1994) ("[Fraud in the inducement] induces a party to assent to something he otherwise would not have; [fraud in the fact] induces a party to believe the nature of his act is something entirely different than it actually is.") (quotation omitted). Winters admitted as much in her May 16, 2001 complaint filed in the first *Winters* case, where she asserted a claim for "Fraud in the Inducement" based on the same facts. Thus, the Release is voidable only by tendering back consideration.

Winters also contends she did not receive adequate consideration for the Release because she acquired an amount less than that already contractually owed to her by Mr. Patel. Winters fails to take into account both the money received from the other parties to the Release and the value of the defendants' own waivers of any claims they might have had against Winters. Moreover, Winters does not claim Mrs. Patel owed Winters money in contract at the time of the Release. Thus, Mrs. Patel's admitted payment of the settlement was adequate consideration.

For these reasons, we agree with the District Court that Winters's claims against Mrs. Patel are barred by the Release. We reject Winters's contention that the dismissal of her first case against Mrs. Patel without prejudice compels a contrary result. Winters's

7

belated attempt to tender back consideration could not cure the legal effect of her prior affirmance.

Because we conclude the Release applies to bar Winters's claims, we do not address Mrs. Patel's contention that Winters was not entitled to receive the insurance proceeds or 401(k) benefits upon Mr. Patel's death. Nor need we reach the merits of Winters's claims against Mrs. Patel.

III.

For the foregoing reasons, we will affirm the judgment of the District Court.